R. H. SCRIBNER, Chairman of the Building Committee of the First Congregational Church of Cherokee, Iowa, Appellee, v. JAMES R. TAGGART AND THE FIDELITY AND DEPOSIT COMPANY, Appellants, AND THE FIRST NATIONAL BANK OF CHEROKEE, IOWA, Intervener, Appellee.

Action on Contractor's Bond: PLEADINGS: PRACTICE.    Error in
1    ruling upon questions of pleading will not be reviewed unless specially assigned, though the action is in equity.

Priority of Liens:    EVIDENCE.  In an action against a contractor
2    and his surety for failure to perform the contract in which a bank, having advanced money to the contractor under an arrangement known to the surety, intervened, claiming as against the surety a balance due on the contract, the evidence is considered and it is held that the lien of the bank is superior to that of the surety.

*Appeal from Cherokee District Court.*

FRIDAY, MARCH 11, 1904.

The opinion states the case.—*Affirmed.*

*J. D. F. Smith* for appellant.

*Thomas McCulla* and *E. C. Herrick* for appellees.

WEAVER, J.—On July 27, 1899, the defendant Taggart entered into a contract with the First Congregational Church of Cherokee to erect for said organization a house of worship for the aggregate price of $15,851, to be paid in certain named installments from time to time, according to the progress of the work upon said building. Taggart was required to furnish a bond for the faithful performance of the contract on his part, and, to obtain such security, applied to the defendant Fidelity Company, through its agent, W. L. Shepard, at Minneapolis, Minn., and, among other things, proposed to give the company an indemnifying bond signed by one Cooper. The company at first declined to furnish the bond, on the ground that Taggart did not have sufficient capital to justify the risk; but it seems to have authorized Shepard to act in the matter, and issue or deliver such bond upon satisfactory arrangements being made by Taggart to obtain necessary working cash capital with which to carry on the job. Thereupon Taggart applied to the First National Bank of Cherokee for assistance. The cashier of this bank, R. H. Scribner, was chairman of the church building committee, and Mr. Chapman, a clerk in the bank, was the church treasurer, having the funds of the society on deposit there. Taggart presented to the bank a telegram received by him from the bond company's agent as follows: "Minneapolis, Minnesota, 4. James Taggart, Cherokee, Iowa; Have bank send me statement by mail that they will loan you up to Three Thousand as wanted also have representative this company write me his opinion of risk if opinion satisfactory and bank agrees to loan I will execute bond here immediately and forward. W. L. Shepard, Gen'l Agt."—and asked for the statement

therein demanded.  He represented to the bank that he would
need, during the interval between the payments to him upon
his contract, the sum of not to exceed $3,000 to keep the work
going; and it was finally agreed between them that the bank
would advance him money in the manner hereinafter de-
scribed, and not to exceed the limit named, for the necessities
of his work in the several intervals between installments paid
Taggart by the church; and that, whenever such an install-
ment was paid, the advances made by the bank to that date
should be paid therefrom.  Upon this agreement the bank by
its president wrote to Shepard as follows:  "First National
Bank, Cherokee, Iowa, Sept. 4th, 1899.  Fidelity and De-
posit Co., Minneapolis, Minn.—Gentlemen: ·  In reply to
your message of this date to Jas. R. Taggart, say we will ad-
vance Mr. Taggart, up to Three Thousand, as wanted be-
tween payments as provided by contract; to be understood
that we furnish this as working capital between payments
only.  Make bond  to R. H. Scribner, Chairman Building
Committee.  Very Truly Yours,  N.. T.  Burroughs, Pt."
Thereafter the bond in suit was delivered, and Taggart pro-
ceeded with the construction of the building.  The bank made
advances to him as occasion required, the indebtedness at no
time exceeding $3,000, and, as each successive instalment
was received from the church, Taggart's account with
the bank to that date was adjusted and paid, except
as to a part of the advances made during the last
interval.  By the method of business adopted, the church or
its building committee paid Taggart in checks or orders on
the treasurer, and Taggart indorsed them in blank, and
turned them over to the bank.  Under the contract between
the church and Taggart, the payment to the latter was to be
made in five installments, the last to be due upon completion
of the building.  The first four installments were paid dur-
ing the progress of the work, and, as each of these sums was
paid, the checks were delivered to the bank by Taggart, and
his account for advances settled to that date.  After the fourth
installment was thus paid and the account balanced, further

advances were made to Taggart to the amount of $1,200, which debt was further evidenced by his promissory note, upon which he subsequently paid $350.

The first four installments paid to Taggart by the church amounted to over $14,900, leaving an unpaid balance of something more than $1,000, and payment of that sum is fully provided for by moneys of the church deposited in the bank in the name of the building committee or of its treasurer. On January 3, 1900, and before the completion of the building, Taggart, at request of Scribner, by way of further security for advances made him, delivered to the latter his contract with the church, indorsed with a written assignment to Scribner, for the use of the bank, "to hold until a final settlement is entered according to the terms of the contract." Thereafter Scribner, as chairman of the committee which represented the church in the contract, brought suit upon the bond against Taggart and the Fidelity & Deposit Company, alleging that Taggart had failed to construct the building in a good and workmanlike manner, and had permitted liens by subcontractors to be filed against the building in a large amount, by reason of all which judgment for damages in the sum of $2,500 was demanded. The surety company took issue upon this claim, and alleged, among other affirmative matters, that the building committee still had in its hands the sum of $1,100 due Taggart on the contract; that said sum was sufficient to complete the building as contemplated by the agreement; and that the chairman of said committee (the plaintiff herein) wrongfully withheld said money, and refused to apply it to the completion of the building or the payment of the liens against it. By way of reply the plaintiff sets up the history of the contract, and of the proceedings thereunder, substantially as above given, and alleges that by virtue thereof the bank obtained and has a prior equitable lien on the balance of the money now on deposit to cover the balance unpaid on said building contract. He also alleges (and it seems to be conceded) that the Fidelity & Deposit Company, at the time of executing the bond in suit, took and

now has full security and indemnity against all liability assumed by it in such instrument. Before any trial was had upon these issues, the bank filed a petition of intervention, setting up substantially the same matter contained in the plaintiff's reply, and alleging that upon faith of its said agreement with Taggart, and of the unpaid balance of $1,000 or more remaining after the payment of the fourth installment on the building contract, it advanced to Taggart the said sum of $1,200. The bank, therefore, asks that the bond company be estopped from making any claim to said balance in the hands of the building committee; that said fund, or so much thereof as may be necessary, be applied to the payment of its claim against Taggart; and that, in case its lien upon said fund shall not be held prior to the claim of the bond company, the latter be required to exhaust its other security before receiving any benefit from the money in controversy. The appellant filed a motion to strike the petition of intervention on various grounds therein set forth, which motion was overruled, and thereupon appellant answered, alleging that it executed the bond upon an express consideration that the bank would make the advancements to Taggart, and that Cooper would also guarantee the faithful performance of Taggart's undertaking, and that Shepard had no authority to make or accept any other conditions. It also pleads that the assignment by Taggart to Scribner of the building contract was made under an agreement by which the bank was to extend credit to Taggart and pay his checks, but thereafter Scribner refused to honor Taggart's checks and refused to apply the balance due on the contract to the payment of the liens on the building. A trial to the court was had upon the issue between the bank and the bond company, and a decree rendered, adjudging the bank to be entitled to have its claim paid out of the moneys in the hands of the building committee, and from this decree the company appeals.

The issue in the principal case upon the plaintiff's claim for damages on account of the nonfulfillment of the contract

is not involved in the appeal, and no further reference will be made thereto.

I. Appellant contends that it was error to deny its motion to strike the petition of intervention. While the issue decided by the court is of an equitable nature, and requires no assignment of errors to secure a review of the merits of the case, it is also the rule, even in equitable actions, that errors in rulings upon questions of pleading cannot be reviewed unless specially assigned. *Lessenich v. Sellers,* 119 Iowa, 314. No such assignment has been made in this case, and we cannot undertake to pass upon the question argued by counsel. Moreover, defendant, having answered and gone to trial upon the merits after the adverse ruling upon the motion to strike, must be held to have waived its exception.

*1. PLEADING: practice.*

II. The real problem in the case is the determination of the relative rights of the bank and the bond company in or to the fund representing the unpaid remainder of the price which Taggart was to receive for building the church. The plain meaning of the agreement between Taggart and the bank is that Taggart thereby pledged or hypothecated to the bank the several installments to become due upon his building contract, and the bank, upon the strength of such security, undertook to advance to him such sums as he might need, between installments, for current demands in the prosecution of his work, not exceeding in any one interval the sum of $3,000. Such was the practical interpretation placed upon their agreement by the parties thereto, and such, in our judgment, is a fair construction of the language employed. We think, also, that the bond company must be held to have become Taggart's surety with knowledge of that pledge. In the first place, Shepard knew that Taggart did not have the necessary money of his own, and the telegram above quoted shows he understood that Taggart was negotiating for a loan from the bank. He knew, of course, that to obtain such loan Taggart must furnish satisfactory security. When, therefore, he received the letter

*2. PRIORITY of liens: evidence.*

from the bank, saying it would advance Taggart the money as needed, "up to $3,000, as wanted between payments as pro-vided by contract; to be understood that we furnish this as working capital between payments only," he had all the no-tice any ordinary business man would require that Taggart had agreed that the debt to the bank for these advances should be deducted from the installments to become due on the build-ing contract. Otherwise, why the careful proviso that the advancements were to be made "only between payments as provided by the contract"? Certainly, neither Shepard nor the appellant understood or expected that the bank was as-suming any liability for the completion of the building, or was in any manner indemnifying the bond company against loss upon its undertaking. Its agreement was not an un-usual or unnatural one. That a contractor whose compensa-tion is postponed, pending the completion of the work, should pledge the benefits of his contract to obtain money for the current needs of the enterprise, would seem to be as legiti-mate as it is common in the business world. It is by such and similar accommodations furnished by banks that many enterprises and works of great importance are pushed to suc-cessful completion. In the present case the arrangement was the more readily accomplished, and the security to the bank more firmly assured, because the church funds to cover the installments were held by the bank upon deposit, and pay-ments to Taggart would pass through its hands, thereby af-fording the means and opportunity of making good the pledge of the several installments for the satisfaction of its claim for advances. In one sense of the word, the money with which the bank was to be reimbursed for its advances was at all times in its own possession, and it had the right, at least as against Taggart, to retain that possession until its claim was satisfied.

Is there, then, any good reason why this right may not be insisted upon as against the bond company? The bond provides, among other things, that in case of Taggart's fail-ure to carry out his contract "to such an extent that the same

shall be forfeited," then the company shall have the option to sublet or complete said contract, and, if said contract shall be sublet or completed by said surety, then the reserve in the hands of the owner, together with any other moneys due or to become due, shall be paid by the owner to the surety; and if the owner shall complete the contract, then all reserves and deferred payments at that time or thereafter becoming due to the contractor shall be credited upon any claim the owner may make upon the surety, because of the·failure of the contractor to·comply with his contract. Under the last clause the appellant contends that it is its right to insist upon the remaining installment of the contract price being credited by the church upon its claim against Taggart. This contention cannot be sustained. The appellant executed the bond with notice that this last installment, like the previous installments, was charged with the lien or burden of the bank's claim for advancements. Moreover, even if·the question of notice be waived or disregarded, the advantage thus sought by appellant is inequitable. The provisions, of the bond on which this demand is based are intended to insure the utilization of the entire contract price to the completion of the building, and prevent its being diverted from such purpose by the contractor or church. That very end has in fact been accomplished by the arrangement between Taggart and the bank. True, the sum of $1,000 or more has not yet been finally withdrawn from the custody of the church treasurer, but through the assistance of the bank the contractor has been able to expend it in advance of its actual transfer to his credit upon the books of the bank. In this manner every dollar of the contract price is applied to its intended purpose, and the liability of the bond company is reduced by the amount of the last installment, as effectually as if Taggart, instead of receiving the advance from the bank, had received advance payment direct from the church and expended it upon the building.

The assumption by counsel for appellant that the bank's claim is an attempt to establish a loan to Taggart on the

credit of the defendant company is based upon a misconception of the facts and of the true relations of the parties. Taggart had the right, under his contract and bond, to apply the full amount coming to him from the church to the completion of the building. If he had not done this, and there was a balance due him in the hands of the church, and the building was still incomplete, then the company had the right to insist that the church apply such balance, as far as it would go, to finish the building according to the agreement. But if the balance or unpaid installment in the treasurer's hands has in fact already been discounted or advanced, and expended upon the construction of the building under an agreement by which that balance is due to the bank rather than to Taggart, the company is not in a position to complain. To allow its claim under such circumstances is neither more nor less than to give it double credit for the same payment. To illustrate, suppose that when the fourth installment was paid, and Taggart's account with the bank balanced, the building had reached that stage of construction where it required $2,000 to complete it according to contract, and there was only $1,000 still unpaid upon the contract price; had Taggart at that point abandoned the job, then, after giving him or the bond company full credit for the unpaid balance, the net liability of the latter would have been $1,000. If, however, before abandoning the work, Taggart had drawn the money from the treasurer and expended it upon the building, the liability of the company would be still $1,000. Precisely the same result follows if, instead of drawing the money from the treasurer in advance, the contractor discounts his claim against the church to the bank, receiving $1,000, which he applies upon the building. By either method the contractor and his surety have had the full benefit of his contract, and the conditions of the bond on part of the church have been fully performed. To adopt appellant's theory is, as we have said, to give it credit for double the amount of the last installment, and, in effect, transfer its liability of $1,000 to the shoulders of the bank.

Some stress is laid upon the fact that, on Taggart's application for the bond, appellant refused to become his surety until after receiving the statement from the bank that it would make the needed advances. It is to be observed, however, that the objection raised was not to Taggart's solvency, because the arrangement between him and the bank did not in the least increase his net financial responsibility. The payments to be made to him, upon his contract being deferred, and having but a small amount of cash on hand, the company declined to deliver the bond until he had arranged with the bank for the loans or advances thought to be necessary to enable him to push the work. According to the agent's statement, it was believed there was a net profit of $1,500 in the job, and on the strength of that prospect, and the personal indemnity given by Cooper, with the assurance that Taggart could secure accommodations at the bank, the bond was executed. That it was then believed or understood that the bank was in any sense assuming to indemnify the appellant, or to do anything more than enable Taggart to have the benefit of the contract payments in advance of their receipt from the church, is clearly negatived by the evidence. Shepard concedes that he knew Taggart did not have the ready money of his own, and would have to make use of his credit, based on that contract, to be able to do the work. He says: "I considered it a personal matter with Mr. Taggart to make use of the payments that he would be entitled to under his contract to help him along in carrying his contract out. I expected him to use his payments to apply on his contract. I expected him to make use of it in carrying out his contract. It was a matter that was to be left with him." Appellant's construction of the contract and bond as stated by counsel is not inconsistent with ours. He says it was the company's right to have the money applied on Taggart's indebtedness, or, in other words, "that all money that became due or would become due on the church contract was to be applied to the discharge of the liabilities that accrued under the contract." This benefit or advantage the appellant has already had, and

it should be granted no more. It is unnecessary to farther review the facts presented by the record. We think the trial court was right in granting the relief asked for by the intervener.

It is said by the appellant, in reply argument, that the aggregate amount of advances contemplated by the arrangement between the bank, Taggart, and the bond company was $3,000, and, as that sum had been in fact advanced prior to the payment of the fourth installment upon the building contract and had been fully settled, the advance made after such settlement, and before the maturity of the fourth installment, is not protected by the agreement. This question does not appear to be raised by the pleadings, nor to have been passed upon by the trial court. Assuming, however, that it is properly before us, we think the agreement upon which the advances were made will hardly bear the narrow construction thus placed upon it. Without repeating its language here, we may say that the evident meaning of the letter sent to Shepard is that the bank would not permit Taggart's indebtedness for advances to exceed at any time $3,000, and that no credit should extend beyond the receipt of the next installment on the building contract. But even if we should be disposed to hold to the construction contended for by appellant, and say that the original agreement upon which the advances were made was exhausted prior to the advance now in controversy, we see no reason why it was not entirely competent for Taggart, even without the knowledge or consent of his surety, to discount, pledge, or hypothecate the final installment, and give the bank a prior right against the world to receive that installment, so long as the amount thereof is applied to the purpose for which it was intended.

The decree of the district court is AFFIRMED.